IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Kendrick Seahorn Sr.**     **Plaintiff**

v.     No. 4:13-CV–009-SWW-JTK

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**     **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Report and Recommended Disposition

Kendrick Seahorn Sr. seeks judicial review of the denial of his application for disability insurance income (DIB).[3] Kendrick last worked in August 2002, as a letter carrier for the U.S. Postal Service.[4] He can no longer do that job due to fallen arches in his feet and degenerative changes in his spine.

At age 31, Seahorn's impairments served as the basis for a medical retirement from the postal service.[5] In turn, his medical retirement served as the basis for an unemployability rating from the Veterans Administration (VA).[6] Seahorn has never sought other employment. He claims he has been disabled since he left the postal service.

**The Commissioner's decision**. Seahorn's insured status for DIB expired on December 31, 2007,[7] so the Commissioner's ALJ considered whether Seahorn was disabled before that time.[8] The ALJ determined that although Seahorn has severe

---

[3]SSA record at p. 110.

[4]*Id*. at pp. 33, 132, 139 & 168.

[5]*Id*. at p. 230.

[6]*Id*. at pp. 231-32. Seahorn served in the U.S. Marine Corps from age 18 to age 21.

[7]*Id*. at pp. 30 & 127.

[8]A person must show he was disabled before his insured status expires to receive DIB. *See* 42 U.S.C. §§ 416(i), 423(c); *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

impairments — degenerative disc disease of lumbar spine and bilateral pes plantus (flat feet)[9] — he could do the full range of sedentary work before his insured status expired.[10] Because the Medical Vocational Guidelines direct a finding of "not disabled" for a young person like Seahorn, the ALJ denied the application.[11]

After the Commissioner's Appeals Council denied a request for review,[12] the decision became a final decision for judicial review.[13] Seahorn filed this case to challenge the decision.[14] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

---

[9]SSA record at p. 15.

[10]*Id*. at p. 16.

[11]*Id*. at p. 20.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

This report explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Seahorn's allegations**. Seahorn maintains the decision is unsupported by substantial evidence for the following reasons:

> [T]he ALJ: 1) erroneously assessed the findings by other government agencies that Mr. Seahorn was not only unable to perform his past work, but also unable [to] be substantially gainfully employed, a standard that mirrors the requirements for entitlement to [DIB]; 2) erroneously interpreted the objective medical evidence of record in concluding that the evidence supported a residual functional capacity for the full range of sedentary work, and 3) erroneously assessed Mr. Seahorn's subjective allegations of pain and corresponding physical restrictions, particularly in the context of a potential worsening of Mr. Seahorn's condition just prior to the expiration of his insured status.…In addition to the ALJ's errors, the Appeal[s] Council compounded matters by failing to consider an additional report from a treating neurologist that indicated Mr. Seahorn suffered from a permanent condition that would prevent prolonged sitting.[16]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Seahorn can do the full range of sedentary work.[17] Sedentary work "involves lifting no more than 10 pounds at

---

[16]Docket entry # 12, pp. 12-13.

[17]*See Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citations omitted) ("Substantial evidence exists if 'a reasonable mind would find such evidence adequate.' Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision.'"); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[18] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[19]

**Whether Seahorn could do sedentary work**. The ALJ's determination about a claimant's ability to work must be supported by medical evidence.[20] In this case, the medical evidence covers over 10 years, but the most probative evidence involves the time period from October 10, 2002 — the amended onset date[21] — to December 31, 2007 — the expiration of insured status. The evidence before December 31, 2007 establishes two impairments: fallen arches or flat feet, and degenerative changes in the spine.

**Flat feet**. Flat feet is foot condition in which the arch on the inside of the foot flattens, allowing the sole of the foot to touch the floor when standing. Flat feet is a common and usually painless condition, but for some people, flat feet are painful. Seahorn is one of those people.

---

[18] 20 C.F.R. § 404.1567(a).

[19] SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[20] 42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. § 404.1508.

[21] SSA record at p. 36. The amended onset date flowed from the denial of Seahorn's first application for DIB. *Id*. at p. 127.

In January 2002, when Seahorn worked as a letter carrier, his podiatrist observed a complete collapse of the arches of both feet which caused the heels to turn outward. According to the podiatrist, the collapse "causes excessive and abnormal pronation which places undue stress and strain on the joints, tendons and ligaments of the right and left foot, as well as going up the knee, hip and back joints as well."[22]  Thus, standing on flat feet doesn't just hurt Seahorn's feet; it affects his knees, hips, and back.[23]

The podiatrist prescribed arch support that were made of a firmer material than the ones Seahorn had been wearing.  The new arch supports helped, but Seahorn still can't do a lot of standing or walking without some pain.  Because his job as a letter carrier required a lot of standing and walking, his PCP recommended an occupation that does not require standing.[24]

Seahorn never looked for another occupation.  Instead, he retired from the postal service, with his feet serving as one of two reasons for a medical retirement.[25]  After the

---

[22]*Id*. at pp. 337-38.

[23]*See id*. at p. 317 (diagnosing "[c]hronic low back pain predominantly 'overload' type related to [malignment] problem from chronic, moderate to severe pronated feet in the background psychological underpinnings" — that is, back pain caused by standing on flat feet).

[24]*Id*. at p. 517 (recommending vocational rehab).

[25]*Id*. at p. 230.

VA awarded an unemployability rating, Seahorn had adequate income for living.[26] Seahorn's feet aren't going to improve. Even with good arch supports, he will always have problems with prolonged standing and walking. Despite flat, a reasonable mind would accept the evidence as adequate to support the ALJ's decision because sedentary work does not involve prolonged standing or walking; it involves sitting.

**Degenerative changes in the spine**. The probative evidence also shows degenerative changes in the lumbar spine. Degenerative changes are part of the aging process, "affect[ing] everyone to some degree, often without causing any bothersome symptoms."[27] Spinal stenosis or impingement on the thecal sac or a nerve root causes bothersome symptoms.[28] Seahorn had "mild" stenosis at level L4-5.[29] Mild stenosis does not suggest disabling impairment. Diagnostic imaging showed no impingement of the thecal sac or a nerve root.[30]

---

[26] *Id*. at p. 508.

[27] Greg Annussek, 2 The Gale Encyclopedia of Med. 921 (4th ed.).

[28] *See* Mary Jeanne Krob & Laura Brasseur, 5 Attorneys Textbook of Med. § 15.32 (3d ed.) (explaining that a disc protrusion may be asymptomatic unless there is some degree of spinal stenosis or disc impingement); Dan J. Tennenhouse, Attorneys Med. Deskbook § 26:8(3) (4th ed.) ("[L]umbar nerve root compression at the spine produces the sensation of pain 'radiating' down the leg along the sciatic nerve.").

[29] SSA record at p. 255-59.

[30] *See id*. at p. 317 (no clinical signs of radiculopathy; that is, no evidence of nerve compression).

Seahorn experienced periodic exacerbations of back pain, but he improved with physical therapy and home exercises. According to his PCP, the degenerative changes preclude heavy lifting.[31] This limitation served as the other reason for Seahorn's medical retirement from the postal service.

Despite mild degenerative changes in the spine, and an inability to do heavy lifting, a reasonable mind would accept the evidence as adequate to support the ALJ's decision because sedentary work does not involve heavy lifting. Sedentary work requires lifting no more than 10 pounds. Seahorn lifts more than that on a regular basis; he cares for an infant and a toddler while his wife works. He reported that he can lift 40 pounds.[32]

Degenerative changes and flat feet may prevent Seahorn from working as a letter carrier, but they do not prevent him from doing sedentary work. Contrary to his contention, the standard for a VA unemployability rating does not mirror the standard for social security disability determination. Both require the inability to perform substantial gainful activity, but what constitutes substantial gainful activity is different.[33]

---

[31]*Id*. at p. 488.

[32]*Id*. at p. 165.

[33]*Compare* 38 C.F.R. § 4.16(b) ("all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be

More importantly, the VA's rules resolve doubts about disability in favor of the veteran.[34] In contrast, an ALJ must evaluate the claimant's credibility before determining his ability to work and rely on competent medical evidence.[35] The ALJ evaluated Seahorn's credibility using the required two-step process and the required factors,[36] and properly determined that Seahorn over-stated his pain and limitation. Seahorn plays basketball,[37] mows the lawn,[38] plays video games,[39] and cares for an

---

rated totally disabled"), *and Faust v. West*, 13 Vet. App. 342, 356 (Ct. App. Vet. 2000) (holding that "a substantially gainful occupation" is "one that provides annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the veteran actually works and without regard to the veteran's earned annual income prior to his having been awarded a 100% rating based on individual unemployability"), *with*, 42 U.S.C. § 1382c(a)(3)(A) ("[A]n individual shall be considered to be disabled… if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"), *and* 20 C.F.R. § 20 C.F.R. § 404.1510 ("Substantial gainful activity means work that--(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit.").

[34] 38 C.F.R. §§ 3.102, 4.2, 4.3.

[35] *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[36] *See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[37] SSA record at p. 458.

[38] *Id*. at pp. 37, 593 & 598.

[39] *Id*. at pp. 410, 443 & 506.

infant and a toddler.[40] These activities do not reflect limitations that prevent sedentary work. No serious argument exists about Seahorn's ability to sit. "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."[41] Seahorn can use his hands and fingers. The inconsistencies between Seahorn's allegations, his activities, and the medical evidence, support the ALJ's credibility evaluation.[42]

In addition, the VA's unemployability rating wasn't based on medical evidence. Instead, the rating was based on "Reports from Post Office received August 15 and September 27, 2002" and "Letter to you dated September 26, 2002."[43] That is not enough to prove disability under social security law.[44] The ALJ's determination about a

---

[40]*Id*. at pp. 190, 340, 570 & 573.

[41]*Id*.

[42]*See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[43]SSA record at p. 231.

[44]*See* 42 U.S.C. § 423 (d)(5(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of

claimant's ability to work must be supported by medical evidence; a medical retirement from the postal service, a VA unemployability award, and a claimant's subjective allegations are not enough to prove the claimant is disabled.[45]

Seahorn's reliance on his new evidence — a November 2000 form that included "no prolonged sitting" as a work restriction for his job as a letter carrier[46] — provides no basis for relief because it falls outside the relevant time period and because there is no medical evidence suggesting limitations in sitting. Whatever injury prompted the form, Seahorn overcame the injury because he returned to work as a letter carrier for another 18 months. Instead of focusing on the VA's determination, or the postal service's determination, the ALJ properly focused on the medical evidence. The medical evidence shows no restriction in sitting, or any other limitation preventing Seahorn from doing the full range of sedentary work. Guideline rule 201.28 directs a finding of "not disabled" for a young man like Seahorn who can do the full range of sedentary work.

**Conclusion and recommendation**. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate

---

symptoms.").

[45]42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. § 404.1508.

[46]SSA record at p. 746.

judge recommends DENYING Seahorn's request for relief (docket entry # 1) and

AFFIRMING the Commissioner's decision.

It is so ordered this 26th day of June, 2014.

_____
United States Magistrate Judge